UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:

        DESOTO OWNERS , LLC,

                       Debtor.

Chapter 11
Case No.  20-43387 (JMM)

---------------------------------------------------------x

In re:

        DESOTO HOLDING , LLC,

                       Debtor.

Chapter 11
Case No.  20-43388 (JMM)

---------------------------------------------------------x

## THIRD AMENDED JOINT PLAN OF REORGANIZATION

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE PLAN PROPONENT OR ANY OTHER PARTY IN INTEREST.   YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT. THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

NUTOVIC &ASSOCIATES
Isaac Nutovic, Esq.
261 Madison Avenue, 26th Floor
New York, New York 10036
Tel.: (212) 789-3100

*Attorneys for Debtors,*
*Desoto Owners LLC*
*Desoto Holding LLC*

Dated:  April 22, 2021

## THIRD AMENDED JOINT PLAN OF REORGANIZATION

## INTRODUCTION

This Third Amended Joint Plan ("Plan") of Reorganization is proposed by the Debtors to the creditors and Interest Holders to resolve and restructure the debts that were owed by the Debtors on the date of the filing of their respective Chapter 11 petition.

The Plan undertakes to resolve all secured claims, administrative and other priority claims, and unsecured claims, as well as all equity interests in the Debtors. The Debtors believe that Distribution pursuant to the terms of this Plan will produce for creditors more than they would receive if the Chapter 11 cases were to be converted and the assets of Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code and the proceeds distributed according to the priorities and in the manner prescribed by the Bankruptcy Code. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, properties, and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtors are the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL CREDITORS ARE ENCOURAGED TO READ THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTORS RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

**A.**    **Defined Terms**.

The following terms when used in the Plan and in the accompanying Disclosure Statement shall, unless the context otherwise requires, have the following meanings, respectively:

1.1.    *"Administrative Claim"* means a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Debtors' Chapter 11 Cases, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving the Debtors' estates, and any and all fees and expenses of Professionals retained by the Debtors to the extent allowed by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code.

1.2.    *"Administrative Claims Bar Date"* means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be an Allowed Claim. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

1.3.    *"Affiliate"* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4.    *"Allowed Administrative Claim"* means all or that portion of any Administrative Claim that has been or becomes an Allowed Claim by Order of the Bankruptcy Court.

1.5.    *"Allowed Claim"* or *"Allowed [      ] Claim"* means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.   "Allow" and "Allowing" shall have correlative meanings.

1.6.    *"ATCF"* means ATCF II Florida-A LLC, the holder of Claim #3 in the Desoto Owners Chapter 11 Case.

1.7.    *"Avoidance Actions"* means any and all Causes of Action which a trustee, debtor in possession, the estate or other appropriate party in interest, may assert under Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

1.8.    *"Ballot"* means the form(s) distributed to each Holder of a Claim in an impaired Class entitled to vote hereon, on which is to be indicated the acceptance or rejection of the Plan.

1.9.    *"Ballot Date"* means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Balloting Agent.

1.10.    *"Balloting Agent"* means Nutovic & Associates, counsel to the Debtors.

1.11.    *"Bankruptcy Code"* shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all amendments thereto which are applicable to the Debtor's Chapter 11 case.

1.12.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of New York, Brooklyn Division, or such other court as may hereafter have jurisdiction over an action with respect to the Chapter 11 Cases.

1.13.    *"Bankruptcy Rules"* means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28, United States Bankruptcy Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28, United States Bankruptcy Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were

subsequently made applicable to the Debtors' Chapter 11 cases or proceedings therein, as the case may be.

1.14.    *"Bar Date"* means the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed.

1.15.    *"Brooklyn Mortgage"* means a mortgage substantially in the form as set forth in Plan Supplement 1.15.1.

1.16.    *"Brooklyn Properties"* means income producing properties located at 177 Veronica Place Brooklyn, New York and 185 Veronica Place, Brooklyn, New York which shall be free and clear of any mortgages or liens and have a value of no less than $8 million.

1.17.    *"Business Day"* means a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in New York, New York are required or authorized to close.

1.18.    *"Cash"* means currency of the United States of America, or checks issued in accordance with this Plan payable in such currency.

1.19.    *"Causes of Action"* means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

1.20.    *"Chapter 11 Case"* means when used with reference to the Debtors, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

1.21.    *"Claim"* shall have the meaning set forth in Section 101(5) of the Bankruptcy Code, and any Cause of Action or liability asserted against a Debtor.

1.22.    *"Claims Register"* means the official register of Claims maintained by the Clerk of the Bankruptcy Court.

1.23.    *"Class"* means such classes of Claims or Interests which are substantially similar to the other Claims or Interests in such class as classified pursuant to the Plan.

1.24.    *"Closing of the Construction Loan"* means the date on which Desoto Owners obtains the first proceeds of the Construction Loan.

1.25.    *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the official docket maintained by such Clerk of the Bankruptcy Court in the Debtor's Chapter 11 case, within the meaning of Bankruptcy Rules 5003 and 902.

1.26.   *"Confirmation Hearing"* means the hearing at which the Bankruptcy Court shall consider the Debtors' request for an order confirming the Plan in accordance with applicable provisions of the Bankruptcy Code.

1.27.   *"Confirmation Order"* shall mean the order of the Bankruptcy Court, *inter alia*, confirming the Plan in accordance with the provisions of the Bankruptcy Code and which is in form and substance satisfactory to the Debtors, in their sole discretion.

1.28.   *"Construction Loan"* means the loan to be obtained by Desoto Owners for purposes of constructing 360 residential multi-family units on the Parcel A Property and which will be secured by a first lien on the Parcel A Property.

1.29.   *"Construction Loan Closing Date"* means the date on which Desoto Owners obtains the first proceeds of the Construction Loan.

1.30.   *"Construction Plan Approval Date"* means the date on which approvals from all governmental authorities have been obtained sufficient to authorize construction on the Parcel A Property.

1.31.   *"Creditor"* shall have the meaning as set forth in Section 101(1) of the Bankruptcy Code.

1.32.   *"Debtors"* means Desoto Holding LLC and Desoto Owners LLC.

1.33.   *"Desoto Holding"* means Desoto Holding LLC, debtor and debtor in possession under case no. 20-43388 (JMM).

1.34.   *"Desoto Owners"* means Desoto Owners LLC, debtor and debtor in possession under case no. 20-43387 (JMM).

1.35.   *"Disallowed"* means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.36.   *"Disclosure Statement"* means the Disclosure Statement for the Third Amended Plan, dated April 22, 2021, respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.37.   *"Disclosure Statement Order"* means the order entered by the Bankruptcy Court approving the Disclosure Statement.

1.38.   *"Disputed Claim"* means a Claim against a Debtor which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

1.39.    *"Distribution"* means the distribution to the Holders of Allowed Claims in accordance with the terms of the Plan.

1.40.    *"Distribution Agent"* means Desoto Owners or any other Entity it selects to make or facilitate Distributions that are to be made pursuant to the Plan.

1.41.    *"Distribution Record Date"* means the date for determining which Holders of Claims are eligible to receive Distributions hereunder and shall be the Effective Date or such other date as may be designated by the Bankruptcy Court in the Confirmation Order.

1.42.    *"Effective Date"* means the date on which all conditions set forth in Section 10.01  have been satisfied or waived.

1.43.    *"Entity"* shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.44.    *"Estate"* means, as to each of the Debtors, the estate created for that Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.45.    *"Exculpated Party or Parties"* means collectively, and in each case in its capacity as such: the Debtors, each such entity's directors, managers, officers, control persons, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

1.46.    *"File,"* *"Filed,"* or *"Filing"* means file, filed, or filing in a Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Clerk of the Bankruptcy Court.

1.47.    *"Final Order"* means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

1.48.    *"General Unsecured Claim"* means any Claim, other than (a) an Administrative Claim, (b) a Secured Claim or (c) a Priority Tax Claim.

1.49.    *"Holder"* means an Entity holding a Claim or Interest, as applicable.

1.50. *"Hudson's"* means Hudson's Furniture Showroom, Inc.

1.51. *"Hudson's Lease"* means that Lease and Option Agreement dated January 10, 2014 between Hudson's and Desoto Square Mall LLC.

1.52. *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.53. *"Interest(s)"* means any and all equity interests, ownership interests or shares in a Debtor issued by that Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in that Debtor, partnership interests in that Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of that Debtor or obligating that Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

1.54. *"Lien"* means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of a Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by any party with standing to bring such a challenge.

1.55. *"Mall Property"* means that certain property located at 303 US Highway 301 Boulevard West Bradenton, Florida 34205.

1.56. *"MTAG"* means MTAG as Custodian for Caz Creek Florida V LLC, the holder of Claim #11 filed in the Desoto Owners Chapter 11 Case.

1.57. *"Namdar Litigation Net Proceeds"* means the proceeds of any recovery received by ML Estate Holding LLC from any of the defendants in an action pending in the New York Supreme Court, County of New York, under Index No. 522621/2018 entitled ML Estate Holdings, LLC, vs. Desoto Square Mall, LLC, *et al,* less all expenses incurred by ML Estate Holdings LLC in prosecuting that action.

1.58. *"Newco"* means an entity to be formed prior to the Effective Date which will be owned by a combination of Meyer Lebovits, ML Estate Holdings LLC, or UK Palm LLC.

1.59. *"Order"* means a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court or other court of competent jurisdiction.

1.60. [Why did you take this out?]*"Parcel A Property"* means that 22-acre parcel to be developed by Desoto Owners as more fully identified in the Plan Supplement 1.62.1.

1.61. *"Person"* means an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

1.62.    *"Petition Date"* means September 22, 2020, the date on which the Debtors commenced their Chapter 11 Cases.

1.63.    *"Plan"* means this Third Amended Joint Plan of Reorganization, as same may be amended or modified from time to time in accordance with the terms hereof or in accordance with the Bankruptcy Code.

1.64.    *"Plan Proponents"* means the Debtors.

1.65.    *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code, and the Bankruptcy Rules) to be Filed by the Debtors no later than seven (7) days before the Confirmation Date, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement.

1.66.    *"Plan Support Agreement"* means an agreement to be signed by Newco obligating it to make all necessary payments under the Plan.

1.67.    *"Priority Tax Claim"* means an Allowed Claim which is entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code.

1.68.    *"Professional"* means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

1.69.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid.

1.70.    *"Property"* means all assets or property of the Debtors' respective estates of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by either of the Debtors, or acquired by the Debtors' Estates, as defined in Section 541 of the Bankruptcy Code.

1.71.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Case.

1.72.    *"Pro Rata Share"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

1.73.    *"Refinancing Loan"* means any loan secured by the Parcel A Property whose proceeds are used, *inter alia,* to repay the Construction Loan in full.

1.74.    *"Released Party"* or *"Released Parties"* means each of the following, Meyer Lebovits, ML Estate Holdings LLC and UK Palm LLC.

1.75.    *"Representative"* means with respect to a particular person, its affiliates, and any director, officer, member, equity holder, owner, manager, employee, agent, consultant, advisor, and/or

other representative of that person and/or its affiliates, including, but not limited to, legal counsel, accountants and financial advisors.

1.76.    *"Romspen"* means Romspen US Master Mortgage, LP, the holder of Claim #10 filed in the Desoto Owners Chapter 11 Case.

1.77.    *"Romspen Parcel A Property Value"* means the value of Romspen's Secured Claim against the Parcel A Property.

1.78.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in a Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

1.79.    *"Security Interest"* means "security interest" as set forth in section 101(51) of the Bankruptcy Code.

1.80.    *"U.S. Trustee"* shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 2.

1.81.    "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

1.82.    "Unsecured Claim" means a claim for which the Claimant does not hold a valid, perfected and enforceable Lien, against either of the Debtors or the Debtors' Estates; or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative or priority claim

B.    **Rules of Interpretation**.

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in

capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

       **C.**     **Computation of Time.** Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

       **D.**     **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

       **E.**     **Reference to Monetary Figures.** All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

       **F.**     **Controlling Document.** In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

       **G.**     **Exhibits.** All Exhibits to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed.

**ARTICLE II**

**PROVISIONS FOR PAYMENT OF ALLOWED
ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

       2.01     Generally.  Allowed Administrative Claims and Priority Tax Claims are not classified in this Plan, and have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, and release of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

       2.02     Administrative Claims.  Administrative Claims include Claims under section 503(b) of the Bankruptcy Code that are entitled to priority under section 507(a)(1) of the Bankruptcy Code, for

costs or expenses of administration of the Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving their Estates, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331 or 503 of the Bankruptcy Code.

Except to the extent that an Administrative Claim has already been paid during the Chapter 11 Case or a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the unpaid portion of its Allowed Administrative Claim on the latest of:   (a)   the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; provided, that Allowed Administrative Claims that arise in the ordinary course of a Debtor's business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

Except as otherwise provided in this Article II and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. ***Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their Property and such Administrative Claims shall be deemed discharged as of the Effective Date.***  Objections to such requests, if any, must be Filed and served on the Debtors and the requesting party by the deadline established for such objections under Section 8.01 of the Plan.

2.03     Priority Tax Claims.  Priority Tax Claims constitute Claims of the kind specified in section 507(a)(8) of the Bankruptcy Code.

Allowed Priority Tax Claims shall be paid, at the election of the Debtors, in full, in Cash, either (x) on the Effective Date, or (y) in equal annual installments payable over the period that is five (5) years from the Petition Date, except to the extent the Holder of an Allowed Priority Tax Claim and the Debtors agree otherwise.  Until paid, Priority Tax Claims shall accrue statutory interest from the Effective Date, fixed at the applicable federal or state statutory rate as in effect with respect to such claim on the Effective Date.

2.04     Professional Compensation. All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than twenty (20) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid.

2.05     Statutory Fees. All fees and interest due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, shall be paid promptly after the Effective Date. The Debtors shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees and interest to the U.S. Trustee until the earliest of such Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under

chapter 7 of the Bankruptcy Code.

<h1 style="text-align:center">ARTICLE III</h1>

<h2 style="text-align:center">DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</h2>

**A.**     **Summary of Classification**.

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.  All Claims against and Interests in the Debtor, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all claims arising from transactions with that Debtor or rejection of executory contracts and all Interests arising from the ownership of the stock or other membership interests in a Debtor, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan.

**B.**     **Class Identification**.

The Claims and Interests, other than Administrative Claims and Priority Tax Claims, are hereby classified as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | MTAG Secured claim | Impaired | Entitled to Vote |
| 2 | ATCF Secured Claim | Impaired | Entitled To Vote |
| 3 | Romspen Secured Claim | Impaired | Entitled to Vote |
| 4 | Hudson's | Impaired | Entitled to Vote |
| 4A | ATC INDOOR DAS LLC | impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Interests in Desoto Owners LLC | Impaired | Deemed To Reject |
| 7 | Interests in Desoto Holding LLC | Impaired | Deemed to Reject |

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Class of Interests, are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversies.

## ARTICLE IV

## TREATMENT OF IMPAIRED CLAIMS
## AND INTERESTS UNDER THE PLAN

4.01    <u>Generally</u>.  Subject to Article VII hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

4.02    <u>Class 1</u> – <u>MTAG's Secured Claim</u>.  The Class 1 Secured Claim is Impaired and entitled to vote on the Plan. MTAG's Allowed Secured Claim shall continue to be secured by any Liens it may have against the Debtors' Property until its claim is paid in full. MTAG's Secured Claim, to the extent it is an Allowed Claim shall be paid in full, together with interest at 1% a month accruing from the Effective Date until the date of payment of such Claim which shall be no later than 10 days after the first amounts are funded pursuant to the Construction Loan Agreement. MTAG shall retain its lien on the Mall Property pending payment in full  of its Allowed Secured Claim. Upon payment in full of the MTAG Allowed Secured Claim, MTAG shall  execute any documents or instruments necessary to evidence the satisfaction or release of its Lien.

4.03    <u>Class 2</u> – <u>ATCF's Secured Claim</u>.  The Class 2 Secured Claim is Impaired and entitled to vote on the Plan. ATCF's Allowed Secured Claim shall continue to be secured by any Liens it may have against the Debtors' Property until its claim is paid in full. ATCF's Secured Claim, to the extent it is an Allowed Claim shall be paid in full, together with interest at 1% a month accruing from the Effective Date until the date of payment of such Claim which shall be no later than 10 days after the Closing of the Construction Loan. ATCF shall retain its lien on the Mall Property pending payment in full of its Allowed Secured Claim. Upon payment in full of the ATCF Allowed Secured Claim, ATCF shall  execute any documents or instruments necessary to evidence the satisfaction or release of its Lien.

4.04    <u>Class 3</u> – <u>Romspen Allowed Secured Claim</u>.  The Class 3 Claim is Impaired and entitled to vote on the Plan. Romspen is the sole creditor of Desoto Holding LLC and its obligation to Romspen is co-extensive with the obligation of Desoto Owners LLC to Romspen.

<u>Payment</u>. Romspen shall receive three payments.

1. On the Effective Date the Debtors shall pay Romspen $250,000.

2. By no later than the Construction Loan Closing Date, Desoto shall make application to the Bankruptcy Court in accordance with section 5.04 to sell at auction, parcels of the Mall Property, designated in the application. The auction sale shall take place no later than 60 days after entry of a court order approving bid procedures. At the auction, the  parcels will be sold off one after the other until such time as the proceeds (including credit bids if any), net of all costs and expenses incurred in connection with the auction sale, will realize at least $10 million. In the event parcels are auctioned the Net Proceeds of those parcels will be paid to Romspen. Within 3 business days of the receipt by Desoto Owners of such proceeds, they shall be paid to Romspen. lieu of auctioning off any properties, Desoto Owners shall have the right to pay Romspen $10 million in cash instead of auctioning any properties. In no event shall payment of $10 million be made later than 18 months after the Effective Date.

3. Within three years of the Effective Date, the Debtors shall sell or refinance the Parcel A Property after the completion of construction of 360 units on the Parcel A Property. Pending the sale or refinance of the Parcel A Property any rental proceeds of the units built on the Parcel A Property shall be used only for ordinary and necessary expenses of operating such units, except that Desoto Owners may use such proceeds to make payments towards the Romspen Allowed Secured Claim. Upon the closing of such sale or refinance, Romspen shall receive an amount of money such that the stream of payments until that final payment date is equal to the face amount of the Romspen Allowed Secured Claim. The Debtors shall have the right, but not the obligation, to make partial payments to Romspen at any time. The Debtor's shall have the right, but not the obligation, at any time to sell any of the Debtors' Property other than the Parcel A Property, utilizing the auction procedures set forth in Section 5.04 of the Plan, and pay Romspen all proceeds of such sale, net of all costs and expenses incurred in connection with the auction sale until such time as Romspen's Allowed Secured Claim is paid in full.

Lien Retention and Substitute Collateral. Romspen's Allowed Secured Claim shall continue to be secured by any Liens it may have against the Debtors' Property until its claim is paid in full. However, as described below, the Debtors will (i) provide substitute collateral (for the Lien on the membership interests of Desoto Owners as set forth in section 4.08 of the Plan and (ii) provide substitute collateral of a value no less than $8 million (for the Lien on the Parcel Property as follows: On or before the Construction Loan Closing Date, title to the Brooklyn Properties shall be conveyed to Desoto Owners and the Brooklyn Mortgage in favor of Romspen, shall be recorded against each of the Brooklyn Properties.

Once title to the Brooklyn Properties is recorded in the land records in the name of Desoto Owners, (A) Romspen shall be deemed to have a Lien on the Brooklyn Properties to the same extent as it had a Lien on the Parcel A Property immediately prior to the commencement of this Bankruptcy Case (B) Romspen's Lien against the Parcel A Property shall be deemed to have been fully satisfied and discharged and Romspen shall have no further claim against the Parcel A Property; (C) Romspen shall file a satisfaction and release of lien against the Parcel A Property substantially in the form set forth in Plan Supplement 4.04.1, or if it fails to do so three days after Desoto Owners has made a written request for it to execute such document, Desoto Owners shall be authorized to execute such document as attorney in fact for Romspen; and (D) Desoto Owners shall, utilizing the current property managers, manage the Brooklyn Properties.

Release of Lien Upon Payment in Full. Upon payment of the full amount of its Allowed Secured Claim, Romspen shall execute a document evidencing the full satisfaction, discharge and release of any Lien it may have against the Mall Property and any other Property of the Debtors substantially in the form as set forth in Plan Supplement 4.04.1.

Default. In the event that the Debtors shall default in making any payment due to Romspen under this Plan or an Event of Default (as defined in the Brooklyn Mortgages) shall have occurred on any of the Brooklyn Mortgages, Romspen shall have the right to file a motion in the Bankruptcy Court seeking an order authorizing it to auction off all of the Debtors' Property on which it has a Lien by implementing the auction procedures set forth in Section 5.04. Any proceeds of such auction sale in excess of amounts due to Romspen, net of all costs and expenses incurred in the conduct of such auction sale, shall be turned over to Desoto Owners.

4.05    Class 4 – Allowed Hudson's Claim. The Class 4 Unsecured Claims are Impaired and entitled to vote. Hudson's may select Option A or Option B. Hudson's election of either Option A or B, shall constitute an acceptance of the Plan. If it fails to select either option then it shall receive treatment specified in Default Option C.

If Hudson's selects Option A Hudson's shall (i) within 60 days of the Effective Date (or such later time as the Debtors shall elect, vacate the premises occupied pursuant to the Hudson's Lease and (ii) be deemed to have released any rights with respect to such premises or any Claim against the Debtors in exchange for payment of $100,000 on the Effective Date.

Alternatively, Hudson's may elect Option B. Under Option B Hudson's will have the right to purchase a clean "box" building of 50,000 square feet, with required parking and access, for the sum of $3,750,000.00 with the interior to be finished by Hudson's. The Debtors have prepared a preliminary site plan which is annexed to the Disclosure Statement as Exhibit "E" identifying the proposed relocation site. Hudson's would be permitted to remain in its present location until six (6) months after the Debtors turn over the completed "box" store to Hudson's. Hudson's has filed with this Court a Plan Support Agreement which currently prohibits it from accepting this treatment or even discussing it with the Debtors.  If Hudson's terminates its Plan Support Agreement, the Debtors will discuss finalizing plans for same and if Hudson's exercises this Option at least ten (10) business days before the date the Plan Supplement is due to be filed, those revised  site plans will be included in the Plan Supplement.

If Hudson's fails to exercise either Option A or Option B, the Hudson's Lease shall be deemed rejected pursuant to 11 U.S.C. § 365(a). Hudson's shall be required to notify the Debtors no later than five (5) Business Days before the Confirmation Date whether it elects its rights under 11 U.S.C. § 365(h)(1)(A) (i)or (ii). If Hudson's elects treatment under 11 U.S.C. § 365(h)(1)(A) (i),  Hudson's shall be required to vacate the premises leased under the Hudson Lease and to file any Claim for rejection damages within 30 days of the Effective Date; Hudson's Claim, if Allowed, shall be treated as a General Unsecured Claim and shall receive its Pro Rata Share of any Distribution to Holders of Class 5 Claims.

4.06    Class 4A – Allowed Claim of ATC Indoor DAS LLC. The Class 4A Unsecured Claim is Impaired and entitled to vote. ATC Indoor DAS LLC may select Option A. ATC Indoor DAS LLC election of Option A, shall constitute an acceptance of the Plan. If it fails to select that option then it shall receive treatment specified in Default Option B.

If ATC Indoor DAS LLC selects Option A, ATC Indoor DAS LLC shall (i) within 60 days of the Effective Date (or such later time as the Debtors shall elect, vacate the premises occupied pursuant to its lease dated March 15, 2004 (the "ATC Lease"), as amended, and (ii) be deemed to have released any rights with respect to such premises or any Claim against the Debtors in exchange for payment of $10,000 on the Effective Date.

If ATC Indoor DAS LLC fails to exercise Option A, the ATC Lease shall be deemed rejected pursuant to 11 U.S.C. § 365(a). ATC Indoor DAS LLC shall be required to notify the Debtors no later than five (5) Business Days before the Confirmation Date whether it elects its rights under 11 U.S.C. § 365(h)(1)(A) (i) or (ii). If ATC Indoor DAS LLC elects treatment under 11 U.S.C. § 365(h)(1)(A) (i), ATC Indoor DAS LLC shall be required to vacate the premises leased under the ATC Lease and to file any Claim for rejection damages within 30 days of the Effective Date; ATC Indoor DAS LLC Claim, if Allowed, shall be treated as a General Unsecured Claim and shall receive its Pro Rata Share of any Distribution to Holders of Class 5 Claims.

4.07    Class 5 – Allowed General Unsecured Claims.  Class 5 is Impaired. Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

Each Holder of a Class 5 Allowed General Unsecured Claim shall receive in full and final satisfaction, compromise, settlement, release, and discharge of each such Allowed Claim: its Pro Rata Share of (a) $600,000 payable on the Effective Date (b) membership interests in the reorganized Desoto Owners LLC in an amount set forth in Section 4.08 of the Plan and (c) 40% the Namdar Litigation

Net Proceeds payable within 90 days of receipt of such proceeds until 100% of all Allowed General Unsecured Claims have been paid and (c) membership interests in the reorganized Desoto Owners LLC in an amount and on terms set forth in Section 4.08 of the Plan. In the event that Class 5 shall vote in favor of the Plan, the Holders of Claims held by Gladstone Investors LLC, Meyer Lebovits, Thornbread and Willowdale Star Holdings LLC shall waive any right to receive a distribution until all Allowed General Unsecured Claims have been paid in full.

Prior to Confirmation, (i) ML Estate Holding LLC will execute an agreement to pay the Debtors 40% of the Namdar Litigation Net Proceeds within 90 days of receipt of such proceeds until 100% of all Allowed General Unsecured Claims have been paid and (ii) Gladstone Investors LLC, Meyer Lebovits, Thornbread and Willowdale Star Holdings LLC will execute a document waiving distribution rights on the terms of this paragraph.

4.08    Class 6 – Interests In Desoto Owners LLC.  Class 6 is Impaired and deemed to reject the Plan. Holders of Interests in Desoto Owners LLC shall receive no distribution under the Plan. On the Effective Date (i) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in Desoto Owners or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or interests in Desoto Owners giving rise to any Claim or Interest shall be canceled and deemed surrendered as to Desoto Owners. The membership interests in Desoto Owners will be recapitalized and issued pro rata to those contributing new capital. In addition, Unsecured Creditors will be given nonvoting redeemable shares as if they had made capital contributions in an amount equal to the Allowed amount of their claims held by them as of the Confirmation Date and have the right to contribute new capital.

4.09    Class 7 – Interests In Desoto Holding LLC.  Class 7 is Impaired and deemed to reject the Plan.  Holders of Interests in Desoto Holding LLC shall receive no distribution under the Plan. On the Effective Date (i) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in Desoto Holding or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or interests in Desoto Holding giving rise to any Claim or Interest shall be canceled and deemed surrendered as to Desoto Holding and shall not have any continuing obligations thereunder. Within ten days of the Effective Date, appropriate steps shall be taken by Meyer Lebovits to dissolve Desoto Holding.

## ARTICLE V

## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

5.01    General Settlement of Claims.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the

Bankruptcy Court, after the Effective Date, the Debtors may compromise and settle Claims against a Debtor or its Estate and Causes of Action against other Entities.

5.02    <u>Revesting of Assets</u>. The Property of Desoto Owners shall revest in Desoto Owners on the Effective Date, free and clear of all Claims and Liens, except as expressly provided for in this Plan.

5.03    <u>Recapitalization, Funding and Development</u>. Any creditor, equity holder or party in interest to these bankruptcy cases shall be permitted to contribute new capital in exchange for membership interests in Desoto Owner provided that prior to the Confirmation Date the party making the capital contribution (i) deposits the contributed capital in escrow with the Debtors' attorneys or (ii) executes a legally enforceable promise to pay monies or contribute assets necessary to fund the Plan (substantially in the form to be supplied in the Plan Supplement) supported by evidence, deemed sufficient in the reasonable business judgment of the Debtors, of liquidity and assets sufficient to enable the promise to be kept.

New capital shall be deemed contributed by (i) payment of funds necessary to fund the Plan (ii) contribution of assets necessary to make the Plan feasible or (iii) execution of a legally enforceable promise to pay monies or contribute assets necessary to fund the Plan (substantially in the form to be supplied in the Plan Supplement) supported by evidence, deemed sufficient in the reasonable business judgment of the Debtors, of liquidity and assets sufficient to enable the promise to be kept. To the extent any membership interests are issued on account of a promise to pay monies or contribute assets in the future and such monies are not paid or such assets not contributed prior to the final payment under the Plan, such membership interests shall be cancelled.

New membership interests in Desoto Owners will be issued in proportion to the dollar amount of new capital contributed. All new membership shares issued will be subject to Lien rights held by Romspen to the same extent Romspen had a Lien on the membership interests in Desoto Owners immediately prior to the commencement of these cases.  The amount of the new capital and the percentage of membership interests shall be determined on the Confirmation Date.

The Plan requires Desoto Owners to provide Romspen with substitute collateral on the Construction Loan Closing Date having a value of no less than $8 million for the release of the Romspen Lien on Parcel A. Newco's equity owners will contribute the Brooklyn Properties to Desoto Owners so that the Debtors can provide Romspen with the substitute collateral required under the Plan.  For purposes of the recapitalization of Desoto Owners, Newco will be deemed to have made a capital contribution in the amount of the appraised value of those properties as may be determined by the Bankruptcy Court. In the event that another creditor or party in interest is willing to contribute other substitute collateral which the Bankruptcy Court will determine is better than the Brooklyn Properties, that creditor's substitute collateral will be accepted instead in the amount determined by the Bankruptcy Court.

Unsecured creditors will be deemed to have contributed new capital in an amount equal to the Allowed amount of their claims held by them as of the Confirmation Date. Their membership interests shall not carry voting rights and shall be subject to redemption at any time by Desoto Owners at a price equal to 50% of the Allowed amount of their Claims.

The Desoto Owners Operating Agreement shall be revised as set forth in Plan Supplement 4.08.1.

In accordance with the Plan Support Agreement or any capital contribution to be made by any creditor, equity holder or party in interest, Desoto Owners will, prior to the Effective Date, obtain sufficient funds to make payments of all amounts required by the Plan to be made within 30 days of the Effective Date. Desoto Owners shall obtain demolition permits to demolish the buildings on the Mall

16

Property and then demolish those buildings; subdivide a roughly 22-acre parcel of the Mall Property which will become the Parcel A Property and obtain approval from Manatee County to commence construction of the Parcel A Property. Newco and/or capital contributions made by a creditor or party in interest, will provide Desoto Owners with all funds necessary to pay for these services and all other costs incurred by Desoto Owners  (including taxes and insurance) until the Construction Loan Approval Date. Thereafter, (i) Desoto Owners will obtain a construction loan to finance construction of 360 multi-family residential units on the Parcel A Property and (ii) Newco's equity owners will cause (A) the Brooklyn Properties (or other properties) having a value of no less than $8 million to be conveyed to Desoto Owners (which will record a mortgage against such properties such that Romspen will have a Lien on such property(ies) in exchange for a release of its Lien on the Parcel A Property) and (B) contribute sufficient funds to pay Class 1 and Class 2 Claims. Prior to Confirmation Newco will execute the Plan Support Agreement obligating it to make these payments and any other payments necessary to complete development of the Parcel A Property.

Following Closing of the Construction Loan, Desoto Owners will complete the development of the Parcel A Property. Desoto Owners will commence leasing the newly constructed units as they are finished. After the 360 units are built and stabilized, Desoto Owners will either sell the developed Parcel A Property or refinance its construction loan. Desoto Owners will then pay off the balance of the Class 3 Romspen Claim and the balance due to the Class 5 General Unsecured Claims from the proceeds of the sale or refinance of the Parcel A Property and if necessary, a sale or refinance of all or part of the rest of the Mall Property.

5.04.    Auction.  At any time after the Effective Date, Desoto Owners shall have the option of conducting an auction sale of all or any portion of the Mall Property (except for the Parcel A Property) provided that: (i) Desoto Owners retains a licensed broker to market the property being sold (ii) the pre-auction marketing period is no less than 30 days (iii) Romspen shall have the right to credit bid its Lien pursuant to 11 U.S.C. §363(k), but Desoto Owners reserves its rights to limit or oppose such credit bid right ; (iv) net proceeds (after payment of all costs and expenses incurred in the conduct of such auction sale) shall be paid to Romspen until the Romspen Allowed Secured Claim has been paid in full and (v) Desoto Owners shall obtain an order of the Bankruptcy Court approving bid procedures on notice to all creditors and equity holders.

5.05    Preservation and Prosecution of Causes of Action. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action (including Avoidance Actions) shall be administered by the Debtors, who from and after the Effective Date shall have all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date.  The Debtors may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Debtors may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Debtors deems appropriate, including on a contingency fee basis.  No Entity may rely on the absence of a specific reference in the Plan, the Disclosure Statement, or the Plan Supplement to any Cause of Action against them as any indication that the Debtors will not pursue any and all available Causes of Action against them.  The Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; provided, that the Debtors, after the Effective Date, may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released,

compromised, or settled in the Plan or a Final Order, the Debtors expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court. All Causes of Action against Meyer Lebovits, ML Estate Holdings and UK Palm LLC are released in accordance with the terms of the Plan Support Agreement.

5.06    <u>Corporate Action</u>. The entry of the Confirmation Order shall constitute authorization for the Debtors, as applicable, to take or to cause to be taken on behalf of the Debtors all limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, including, without limitation, the execution and delivery of any documents or instruments of transfer necessary, appropriate or incident to the implementation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court upon confirmation of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders, members, or directors of the Debtor. On the Effective Date, the Debtors are authorized, to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Plan Supplement.

5.07    <u>Exemption from Certain Transfer Taxes and Fees</u>. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Parcel A Property or the Mall Property pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## ARTICLE VI

## TREATMENT OF EXECUTORY
## <u>CONTRACTS AND UNEXPIRED LEASES</u>

6.01    <u>General Rejection of Executory Contracts</u>. The Plan constitutes and incorporates a motion by the Debtors, in accordance with Section 365 of the Bankruptcy Code, to reject any executory contract and/or unexpired lease that is not specifically designated and identified for assumption by the Debtors in a schedule of contracts/leases which shall be included in the Plan Supplement.

6.02    <u>Rejection Damage Claims</u>. Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (2) 30 days after notice of any rejection that occurs after the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever**

barred from assertion, and shall not be enforceable against, as applicable, the Debtors, their **Estates, or property of the foregoing parties, without the need for any objection by the Debtors, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary**. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

6.03    <u>Reservation of Rights</u>. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the schedule of assumed/rejected Executory Contracts and Unexpired Leases, or anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or Debtors has any liability thereunder.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

7.01    <u>Timing and Calculation of Amounts to Be Distributed</u>. Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.02    <u>Delivery of Distributions in General</u>. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VII, shall be made to Holders of record as of the Distribution Record Date by the Debtors: (1) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Case on such Holder's behalf. Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

7.03    <u>Unclaimed Property</u>. Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within 60 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the

undeliverable or unclaimed distribution against the Debtors, the Estates, or their respective properties or assets.  In such cases, any Cash or other property held by the Debtors on account of such claims for undeliverable or unclaimed distributions, shall become the property of Debtors notwithstanding any federal or state escheat laws to the contrary. The Debtors and their respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

7.04    <u>Compliance With Tax Requirements</u>. In connection with the Plan, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors each reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including the Priority Claims Reserve) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

7.05    <u>Fractional Cents</u>. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.06    <u>Payments of Less than One Hundred Dollars</u>.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim or Interest would be less than one hundred dollars ($100.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Debtors shall not be required to make such payment.

7.07    <u>Setoffs</u>.  Except as otherwise provided for herein, the Debtors, may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor or its estate of any Claim it may have against the Creditor.

7.08    <u>Allocations</u>. Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

7.09    <u>No Postpetition Interest on Claims</u>. Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING
## <u>CONTESTED AND CONTINGENT CLAIMS AND INTERESTS</u>

8.01    <u>Objections to Claims</u>.  The Confirmation Order shall provide that from and after the Effective Date only the Debtors shall have authorization to file and/or prosecute objections to Claims and/or Interests. Objections to Claims shall be filed with the Bankruptcy Court and served upon the affected Creditor(s) or Interest Holder(s) no later than one hundred twenty (120) days after the Effective Date; <u>provided</u>, <u>however</u>, that this deadline may be extended by the Bankruptcy Court upon motion of the Debtors and/or Debtors. Unless an Order of the Bankruptcy Court specifically provides for a later date, any Proof of Claim or proof of Interest filed after the Confirmation Date shall be automatically Disallowed as a late filed claim, without any further action by the Debtors or the Debtors being required, unless and until the party filing such Claim obtains the written consent of the Debtors to file such Claim or Interest late or obtains an Order of the Bankruptcy Court upon notice to the Debtors and Debtors that permits the late filing of the Claim or Interest, in which event, the Debtors and the Debtors shall have one hundred twenty (120) days from the date of such written consent or Order to object to the allowance of such Claim, which deadline may be extended by the Bankruptcy Court upon consent of the Holder of such late Claim or on motion of the Debtors, without notice or a hearing. Subject to Bankruptcy Court approval, objections to Claims and/or Interests may be litigated by the Debtors to judgment, settled or withdrawn, in their respective discretion.

8.02    <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been determined by a Final Order of the Bankruptcy Court.

8.03    <u>Reserve for Allocated Distributions</u>. The Debtors shall withhold from the property to be distributed under the Plan an amount which shall be sufficient to be distributed on account of such Disputed Claim(s). As to any Disputed Claim, upon a request for estimation by the Debtors, and/or Debtors, as the case may be, the Bankruptcy Court shall determine what amount is sufficient to withhold.

8.04    <u>Distributions after Allowance</u>.  Payments and Distributions to each Holder of a Disputed Claim, to the extent such Disputed Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the subject Claim belongs.

8.05    <u>Treatment of Contingent, Disputed and Unliquidated Claims</u>. Until such time as a contingent, unliquidated or Disputed Claim becomes fixed, liquidated, absolute, and Allowed, such claim shall be treated as a Disputed Claim for purposes related to estimations, allocations, and Distributions under the Plan.

8.06    <u>Preservation of Rights</u>. Except to the extent that any Claim is Allowed during the Chapter 11 cases or expressly by this Plan, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtors, to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors with respect to any Claim or Interest, including, but not limited to, all rights of the Debtors to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

8.07    <u>Estimation of Claims</u>. Before, on, or after the Effective Date, either of the Debtors, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors and Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.08    <u>Disallowance of Claims</u>. Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Debtors.  Except as otherwise provided herein or as agreed to by the Debtors, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

8.09    <u>Amendments to Claims</u>. On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtors, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

## ARTICLE IX

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

9.01    <u>Compromise and Settlement of Claims, Interests, and Controversies</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and

controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtors may compromise and settle any Claims and Causes of Action against other Entities.

9.02    Discharge of Claims and Termination of Interests. To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan: (a) the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of any and all Claims, Interests, and Causes of Action against the Debtors of any nature whatsoever including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such liability relates to services performed by employees of the Debtors prior to the Effective Date and that arises from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any interest accrued on Claims or Interests from and after the Petition Date, and all other liabilities against, liens on, obligations of, rights against, and Interests in, the Debtors or any of its assets or properties, (b) the Plan shall bind all Holders of Claims and Interests, (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, and (d) all Entities shall be precluded from asserting against the Debtors, their Estates, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, in each case regardless of whether or not:  (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; (iii) the Holder of such a Claim or Interest has accepted, rejected or failed to vote to accept or reject the Plan; or (iv) any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.  Any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

9.03    Term of Injunctions or Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.04    Exculpation.  Notwithstanding anything contained in the Plan to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any Cause of Action or any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the Disclosure Statement, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Plan Supplement, the Chapter 11 Case, solicitation of votes on the Plan, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for Claims related to any act or omission

that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release or exculpate any Claim relating to any post-Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement executed to implement the Plan.

9.05    Injunction.   Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtor pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Released Parties, or the Exculpated Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan.

## ARTICLE X

## CONDITIONS TO EFFECTIVENESS OF THE PLAN

10.01    Conditions Precedent to the Effective Date. It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Section 10.02 hereof):

1.    The Confirmation Order shall have been duly entered and in full force and effect;

2.    The schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements and exhibits to the Plan, shall be in final form; and

3.    The Debtors shall have received a deposit in accordance with the terms of the

Plan Support Agreement.

10.02    <u>Waiver of Conditions</u>.  The Debtors, in their sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Section 10.01 above. The Debtors reserves the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

10.03    <u>Effect of Failure of Condition</u>.  In the event that the condition specified in Section 11.01 of the Plan has not occurred or been waived on or before ninety (90) days after the Confirmation Date, the Confirmation Order may be vacated upon Order of the Court after motion made by the Debtors.

10.04    <u>Substantial Consummation</u>. "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI

## **MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

11.01    <u>Modification of Plan</u>.  Modifications of the Plan may be proposed in writing by the Debtors at any time before Confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code. A Holder of a claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

11.02    <u>Revocation of the Plan</u>.  The Debtors reserve the right to revoke and withdraw the Plan prior to entry of the Confirmation Order.  If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void.  In order to effectuate a revocation of the Plan, the Debtors shall file a notice of such revocation with the Bankruptcy Court and serve a copy on all parties entitled to notice.

## ARTICLE XII

## **RETENTION OF JURISDICTION**

12.01    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of or related to the Chapter 11 Case and the Plan, including jurisdiction to:

      1.    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      Resolve any matters related to:  (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) amending, modifying, or supplementing, after the Effective Date, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including, without limitation, arising under or in connection with the Asset Sale Transaction;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     Hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

21.     Enforce all orders previously entered by the Bankruptcy Court in these cases;

22.     Hear any other matter not inconsistent with the Bankruptcy Code; and

23.     Enter an order closing the Chapter 11 Case.

## ARTICLE XIII

## GENERAL PROVISIONS

13.01   <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with a Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

13.02   <u>Additional Documents</u>. On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.03   <u>Reservation of Rights</u>. Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors with respect to the Plan,

the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights with respect to any Claims or Interests.

13.04    <u>Notices</u>.  Any notice required or permitted to be provided to the Debtors under the Plan shall be in writing and served by (i) email at inutovic@nutovic.com and (ii) either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> If to either of Desoto Owners LLC or Desoto Holding LLC:
> Nutovic & Associates
> 261 Madison Avenue, 26th Floor
> N.Y. N.Y. 10016

13.05    <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.06    <u>Severability</u>.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option, remain in full force and effect and not be deemed affected.  However, the Debtors reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.07    <u>Votes Solicited in Good Faith</u>. Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals nor the Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

13.08    <u>Waiver and Estoppel</u>. Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

13.09    <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above.

{Signatures on page following}

Desoto Owners LLC


By:/s/*Meyer Lebovits*
Meyer Lebovits, Managing Member

Desoto Holding LLC


By: /s/*Meyer Lebovits*
Meyer Lebovits, Managing Member

Nutovic & Associates
Counsel to the Debtors


By: /s// *Isaac Nutovic*
        Isaac Nutovic